Exhibit A -- James Julsonnet Interrogatory Answers to Tophills

7.      Because discovery, investigation, and analysis of these matters are ongoing and incomplete at this time, there may be additional information responsive to these interrogatories but not yet known to Plaintiff.  Accordingly, Plaintiff makes each response without prejudice to its right to provide further responses later if additional information becomes known.

8.      Plaintiff objects to the interrogatories, definitions, and instructions to the extent they purport to impose a duty upon Plaintiff to locate responsive documents or information through any effort beyond making reasonable inquiry and conducting a diligent search of the files or sources where documents and information responsive to the interrogatories could reasonably be expected to be found.

9.      As the discovery has only begun, we have not yet been able to locate all of the documents requested. This request is overly broad and unduly burdensome at this stage of the litigation.

10.     To the extent that any of these requests include Electronically Stored Information, these requests are not in proportion to the significance of the issues in dispute and do not include the required specificity. Given the lack of specificity, certain potential sources of electronically stored information may not have been searched in response to these questions.


## SPECIFIC OBJECTIONS AND RESPONSES TO INTERROGATORIES

**Subject to and without waiving the foregoing general objections, which Plaintiff incorporates into each response below, Plaintiff objects and/or responds to the Defendant's First Set of Interrogatories as follows, expressly reserving his right to supplement these responses if and when appropriate.**

**PLEASE NOTE: Our computers and most of the documentation related to our property and Diane's online business are in the Defendants' possession and we have no access.  We have searched for receipts and other documents related to our property, her business, and this dispute and provided what we have been able to find.**


## INTERROGATORIES

**Interrogatory No. 1**:

2

Please identify all individuals whom you intend to call as witnesses at trial in this matter and a summary of their expected testimony.

**Answer:**

*My legal counsel instructs me to object, on the basis that the interrogatory is overly broad and we are still in the discovery phase of this case.  Notwithstanding the objection but not waiving the same, the Plaintiff states the following:*

**James Julsonnet**

I will testify about my communications and interactions with the Defendants and their agents and employees about the moving job.  Those included setting up the move, interacting with the workers when they were at our home loading the truck; interacting and talking with the foreman the day of the move,  who agreed to receiving payment after the job was finished. The foreman had asked for payment up front before the truck was even loaded – I told him payment would  be made when the move was completed, and he agreed.  They then began loading the truck.  They were not done loading the truck late in the evening when Diane and I left to sleep in a motel.  They never returned on the next day  to finish the job and get paid.  I will testify about efforts to get ahold of the Defendants to finish the job, and the efforts I, Diane, and our realtor had to undertake to clean up the mess left by the movers.  I will testify about the interactions, my communications with the  Defendants after the day they came to load the truck, my attempts to retrieve our property including communicating with Massachusetts authorities and the Department of Transportation.  I will also testify about the damages we have experienced due to the Defendants conduct.

**Diane Julsonnet**

My wife Diane will testify about her observations on the  day of the move, her communications with movers and with the Defendants' representatives as well as with  the person AKA Scott Simpson and Jeff Atwell. She will also testify about communications she had with representatives of the Defendants after the moving date, when she called to have the items delivered.  Those include communications with  Shai Sanchez. Ms. Sanchez asked Diane if the truck would fit in front of the house. Diane told her that she didn't think that there would be a problem, Shai had said that if there was, it would cost a certain amount for each extra foot that we had to park from the house and if we had any stairs, each stair would cost $75 each. Diane told her that was not in the contract. That is also when she had told Diane that the price had increased. Diane talked to Shai on multiple occasions to try to get our goods released. Diane asked her if she could at least tell me where the goods were being stored. She stated that she could not. Diane continued to get phone calls from her and another dispatcher from the Denver area. Diane told her that we were happy to pay our contract price and have our goods delivered. She stopped talking to Diane when she told her that she would need to talk to our attorney. Diane talked to AKA Jeff Atwell and Scott Simpson multiple times. Scott said that because there was damage in the move, we would have to deal with Jeff. Each time Jeff referred Diane to Mike, the head dispatcher. He said that he would call him and have him call us right away, We never received a call from Mike.  She will testify about efforts to get ahold of the Defendants to finish the job, and the efforts she, I and our realtor had to undertake to clean up the mess left by the

3

movers.  Diane will also testify about our attempts to retrieve our property including, in addition to the communications noted above, communicating with Massachusetts authorities and the Department of Transportation.  She will also testify about the damages we have experienced due to the Defendants conduct, including but not limited to the loss of her business.

**Susan Rochwarg**
Keller Williams Realty
Work: (978) 470-2048
Cell: (978) 902-1231

Susan was our realtor at the time of the move. She came to the house the day after the move to see what the house looked like. She will testify about the  appalling condition of the house caused by the movers and that the movers had not yet completed the job.  Susan will testify to the efforts she had to undertake to find a company to clean up after the Defendants.

**Michael Evans**
MHRN-Transportation Specialist
Department of Transportation Representative
(202) 385-2414

**Donnice Wagoner**
Lead Transportation Specialist
Commercial Enforcement, and Investigation Division Federal Motor Carrier Safety Administration
(202) 336-8045

We filed a report against Defendants with the Department of Transportation in October of 2021 after trying to have our items delivered. The Department of Transportation representative was Michael Evans, MHRN, Transportation Specialist. On December 16, 2021, Donnice Wagoner, Lead Transportation Specialist in the Commercial Enforcement, and Investigation Division Federal Motor Carrier Safety Administration sent us an email informing us that Michael Evans was going to be our investigator. The initial representative informed Diane that our situation would be treated as a case of holding our "furniture hostage". The representative also stated that 5 Star was actually Tophills, Inc. and had a lot of complaints against them.

**Shai Sanchez**
TopHills, Inc.
(720) 548-6347

Shai was the main point of contact for Defendants. On 10/18/21 she asked for pictures of the condition of the house and what was left behind.  When Diane called to have the items delivered on October 15, 2021, Shai told me that we would pay $75.00 for each stair that we had in our

4

home and if they had to park their truck too far from the house, we would pay an additional amount for each foot after 50 feet. Diane asked her to send us the contract where that was stated. At the same time, she told us that the price had increased significantly. Diane told her that we had a contract with the movers for approximately $26,000 and that was what we were planning to pay. Needless to say, our goods were not scheduled to be delivered on the date requested.

Shai Sanchez continued to call from 5 Star Movers. At one point a dispatcher from the Denver area called to set up delivery as well at the new price. Diane talked to Shai shortly after to see if she would confirm that our items were still in Massachusetts. Shai said that she could not tell her where they were located. Later, after Diane told her that she would need to talk to our attorney, we didn't receive any more contact from 5 Star Movers, and they never sent us any communication in writing despite our requesting it. All of it was done on the phone.

The only thing that we ever received from TopHills in writing was an email from Tony Escobar to me asking to contact him regarding the paperwork. We were on the road driving from Massachusetts to Colorado, so we did not see the email. He then followed up with a phone call that we received when we were driving through Kansas. He said that we needed to come into the office to sign some paperwork. I asked him to send it by email and we would sign it and send payment as we had agreed with the foreman, when the move was completed.

**Michael Reardon**
Detective
North Andover Police Department
(978) 683-3168

Detective Reardon will testify about his efforts to help us get our property back from the Defendants. He communicated with Tony Escobar multiple times and eventually received some paperwork from Mr. Escobar. The detective forwarded the paperwork to us, and we discovered that TopHills had simply forged my signature on the cost line as well as added packing items that we had not approved.

**Kenneth Schappert**
Johnson/United Van Lines
(719) 290-3913

Mr. Schappert tried to call Tony Escobar to arrange to pick up our items. He made several attempts to call Mr. Escobar with no response.

**Scott Diamanti**
Senior Program Manager
Leidos

(717) 913-0054

Mr. Diamanti is one of many people who can testify to the damage Defendants caused us. He saw first-hand how our furniture being held hostage affected us. He loaned us a table and chairs, tv stand and outfitted some of our kitchen with extra items that he had because our

5

property was held up in Massachusetts.

**Cindy Roa**
(719) 337-5569

Cindy is another person who can testify to the damage Defendants caused us.  She saw first-hand how our furniture being held hostage affected us.  She loaned us a table to help us out.

**Morgan Julsonnet**
(478) 396-0722

**Nathan Julsonnet**
(719) 659-4831

Morgan and Nathan will testify to the damage Defendants caused us.  They saw first-hand how our furniture being held hostage affected us.  They helped us procure used furniture to use in our living room.

**Interrogatory No. 2:**

Please identify all individuals whom you intend to call as expert witnesses in this case. For each such individual, please identify his or her name, address, telephone number, profession, professional or educational background, areas of expertise, the subject matter on which he or she will testify, and a summary of the basis of each opinion of the expert.

**Answer:**

*My legal counsel instructs me to object, on the basis that the interrogatory request information that is not in accordance with the Scheduling Order. Expert disclosures will be made in accordance with the Scheduling Order. Notwithstanding the objection but not waiving the same, the Plaintiff states the following:*

 No experts have been retained as of this date.

**Interrogatory No. 3**:

Please provide the factual basis of any defense or affirmative defense that you have to any the Defendant's counterclaims.

**Answer:**

The moving company's argument is that we never paid them. However, as agreed to by me and the foreman, we would pay when the move was completed. We had the payment. However, Tophills never finished the move and therefore the condition for payment was never fulfilled.

6

Secondly, Tophills  forged my signature on the documents supposedly associated with the move, which Detective Reardon sent us..

Thirdly, TopHills unilaterally increased the price, more than doubling it from the original price, and charging us for packing materials that we never approved. The foreman and I  had agreed that they would not use boxes unless approved first. We approved one box to be used. We never approved the charges that are listed under the packing section.

Fourthly , TopHills never completed the job, did not return the  next day to finish loading the truck, and never delivered our goods to the agreed upon location in Colorado. Since they didn't finish the job and didn't return the next day or deliver our property, they materially breached the contract..  We had to pay companies to clear out the rest of the things and incur additional costs as a result.

Fifthly, TopHills failed to perform its end of the deal. In addition to the issues noted above, at the beginning of the move, we went through the house with TopHills' foreman and put stickers on items that they were not to pack as we were simply going to donate them. The movers packed all of those items. In addition, they damaged the house during the move, which we had to pay to repair before we were able to sell.

Sixthly, TopHills violated federal law by:
a.      Failing to conduct a physical survey of the household goods to be provided;
b.      Failing to provide a written estimate based on the physical survey, of the transportation charges
c.      Failing to abide by the Binding Estimate agreed to by Defendants;
d.      Failing to determine charges for accessorial services;
e.      Failing to provide us a signed and dated copy of the Binding Estimate;
f.      Attempting to amend the estimate of charges after loading the household good shipment.
g.      Failing to renegotiate a new binding estimate listing, in detail, the additional household goods or services demanded;
h.      Failing to agree, in writing, that the Binding Estimate agreed to with Defendants would be considered a nonbinding estimate subject to CFR §375.405.
i.      Violating federal regulations and DOT rules;
j.      Refusing to honor federal regulations that failure to execute a new binding estimate signifies a reaffirmation of the original binding estimate, and attempting to collect the additional moneys demanded;
k.      By holding our goods for ransom;
l.      Failing to inform us  of the additional services to be performed and the cost thereof, and allowing them at least one hour to determine whether they wanted the additional services, and then providing a written attachment designating those services and attaching it to the bill of lading;
m.      By failing to deliver our goods after they offered to pay the agreed to binding estimate price;
n.      Misrepresenting that nature of the services that Febex was providing to them;
o.      Using false and misleading statements in their dealings with us as identified above and in our complaint;
p.      Negotiating in bad faith;
q.      Wrongfully converting our property;
r.      Forging my name (James Julsonnets) name on the bill of lading and asserting it as an agreement to pay the higher price;
s.      Failing to inform us of the relationship between Defendants and Five Star;
t.      Refusing to reveal the location of our property.

Exhibit A -- James Julsonnet Interrogatory Answers to Tophills

That's what we have to date.  There may be more facts and defenses discovered and we reserve the right to supplement.

**Interrogatory No. 4**:

Please provide the factual basis of your claim against the Defendant for violation of the Racketeering and Corrupt Organizations Act.  Further specifying:

a.  The amount of damages that you suffered as a result of this claim and how said damages are calculated;
b.  The name and addresses of all witnesses that support your claim and what their expected testimony would be; and
c.  A detailed description of any documents that support your claim.

**Answer:**

The Defendants violated RICO, 18 U.S. C. §1962(c) by engaging in an enterprise engaged in or activities affected by interstate commerce, which is the provision of moving services to individuals like Diane and me across state lines. The Defendants utilized the U.S. mails, wires, and internet to conduct this enterprise, sending and receiving communications by way of telephone, internet, and emails to conduct their enterprise. Enrique A. Escobar and TopHills were employed by or associated with this enterprise. Enrique A. Escobar and TopHills directly and indirectly conducted or participated in the conduct of the enterprise. Naryshkin and Febex fraudulently represented themselves as moving companies when they were offering brokerage services. Escobar and TopHills acted as the actual movers with whom Febex coordinated the activities and practices to defraud individuals like Diane and me. Upon information and belief, the Defendants participated in numerous acts before their predation upon us, using the mails and internet tens if not hundreds of times to conduct their fraudulent activities on victims like us over two or more years. Enrique A. Escobar and TopHills participated in the enterprise through a pattern of racketeering activities, whereby Naryshkin and Febex fraudulent represented itself as moving companies when they were offering brokerage services, and Escobar and TopHills acted as the actual movers with whom Febex coordinated the activities and practices to defraud individuals like Diane and me.

a.  Discovery is still on-going, and costs are currently being calculated and will become available once all discovery is complete.
b.  Please see answers to Interrogatories Nos. 1 & 3.
c.  Discovery is still on-going, and we are currently collecting all necessary documents.  Descriptions of such will become available once discovery is complete. Our computers and most of the documentation related to our property and Diane's online business are in the Defendants' possession and we have no access.  We have searched for receipts and other documents related to our property, her business, and this dispute and provided what we have been able to find.

**Interrogatory No. 5**:

Please provide the factual basis of your claim against the Defendant for breach of contract.  Further specifying:

**Answer:**

We  have tendered performance of our obligations under the agreement with Defendants and Binding Estimate Agreement, and the agreement concerning timing on the day of the packing for the move.. TopHills materially breached its agreement by refusing to deliver the goods as its agent Febex/Interstate had agreed, failing to properly pack items, failing to deliver the Julsonnets' property, but rather, demanding that the Julsonnets pay almost double the agreed price, and withholding delivery and withholding access by the Julsonnets to their goods, causing damage to the Plaintiffs.

   a. Discovery is still on-going, and costs are currently being calculated and will become available once all discovery is complete.
   b. Please see answers to Interrogatory Nos. 1 & 3.
   c. Discovery is still on-going, and we are currently collecting all necessary documents. Descriptions of such will become available once discovery is complete. Our computers and most of the documentation related to our property and Diane's online business are in the Defendants' possession and we have no access.  We have searched for receipts and other documents related to our property, her business, and this dispute and provided what we have been able to find.

**Interrogatory No. 6**:

Please provide the factual basis of your claim against the Defendant for conversion and trespass. Further specifying:

   a. The amount of damages that you suffered as a result of this claim and how said damages are calculated;
   b. A detailed description of and property converted and the value of the same;

   c. The name and addresses of all witnesses that support your claim and what their expected testimony would be; and
   d. A detailed description of any documents that support your claim.

**Answer:**

The Defendants knowingly took possession of our  property understanding that they would not relinquish the property pursuant to the Binding Moving Estimate that the Julsonnet's agreed to.  The Defendants have held our property hostage  as a means of attempting to force us  to pay more than twice the amount that was agreed.  The Defendants have wrongfully deprived us  of our property.

10

a. Discovery is still on-going, and costs are currently being calculated and will become available once all discovery is complete.

b. Description of property and estimated value:  The property is in the possession of the Defendants. It consists of all our worldly tangible possessions that we had acquired up to that point in time and Diane's business inventory

c. Please see answers to Interrogatory Nos. 1 & 3 & 6.

d. Discovery is still on-going, and we are currently collecting all necessary documents.  Descriptions of such will become available once discovery is complete.

Our computers and most of the documentation related to our property and Diane's online business are in the Defendants' possession and we have no access. We have searched for receipts and other documents related to our property and provided what we have been able to find.

Here is my and Diane's good faith attempt to list the inventory of our house from memory
Household Inventory:
Livingroom:
2 year old electric reclining sofa and loveseat; 2 end tables; 1 large sofa table; coffee table; tv stand and 58 " tv; 3 decorative plant stands; bookcase; lamp; decorative table; Wii console, games and controller; PlayStation, games and controllers; videos and DVDs; tuner; camera and video camera.

Deck and below: outdoor table with firepit and 4 reclining chair including umbrella; grill; generator; snowplow; 1 scooter;2 lawnmowers and 1 robotic lawnmower; 2 ladders; garden decorations; hoses and hose holder.

Dining Room: dining room table with 6 chairs and 1 bench (just refinished); grandfather's school deck; hutch; China cabinet; 3 sets of China; Ethan Allen China cabinet.

Kitchen:
Antique refrigerator (decoration); small table with 2 chairs; rug; 4 tier shelf; kitchen items including 12 piece set of Fiesta ware; pots and pans, baking items; pampered chef, etc.; Decorative items were interspersed in these rooms as well as the office.

Office:
Piano that I learned to play on; rocking chair; keyboard; floor lamp.

Back Office:
Desk; Computer with Monitor; 45" tv.

Laundry Room:
Industrial Shelving to hold food items; washer and dryer; misc. bathroom items since it was also the powder room.

11

Entryway:
Large rug; decorative table with Thomas Kincade picture above and decorative items on it.

Master Bedroom:
King size bed with brass headboard; jewelry; dresser; night table; l frame; amp; clothing in closet as well as shoes; bath items in master bath.

Other Bedroom:
California King Bed and frame; dresser; lamp; night table; hope chest with antique quilts; bedding for beds: Thomas Kinkade pictures.

2nd bedroom:
Nordic treadmill; misc. bath items in closet.

3rd bedroom:
twin bed; matching nightstand and dresser and lamps.

Basement:1st room - Storage Shelving
We used it for excess kitchen appliances and items.

Main Basement: Filing cabinet; important papers; books; family pictures; 2 refrigerators; customized wheelchair for Diane; 2 handicapped scooters; rolled up queen mattress still in original packing; break apart shelving and racks for inventory; old military footlocker belonging to Jim's dad with family heirlooms; stereo equipment; games; Most of Diane's business inventory that is partially identified in the documents produced.

Tools Area:
3 Craftsman toolboxes with tools; 1 small toolbox; compressor; painting equipment; 3 vacuum cleaners; weed blower. Tools replacement cost approximately $100,000.

Garage: Outside tools for yard; 2 chainsaws; and 1 brand new gas grill still in box; and 1 outside plant stand

That is the inventory as we can remember going from room to room.  It does not include Diane's business inventory of goods she buys and then resells online.  She has produced as best we can documentation relating to those items.

Exhibit A -- James Julsonnet Interrogatory Answers to Tophills

**Interrogatory No. 7**:

Please provide the factual basis of your claim against the Defendant for violation of the Massachusetts Consumer Protection Statute.  Further specifying:

    a.  The amount of damages that you suffered as a result of this claim and how said damages are calculated;

    b.  The name and addresses of all witnesses that support your claim and what their expected testimony would be; and

    c.  A detailed description of any documents that support your claim.

**Answer:**

Defendants violated the MCCPA by the conduct described above, including but not limited to:

    a. Violating federal laws, regulations, and DOT and FTC rules;

    b. Using false and misleading statements in their dealings with us  as identified above;

    c. Negotiating in bad faith;

    d. Wrongfully converting, detaining, and damaging our  property;

    e. Forging my name (James Julsonnet) name on the bill of lading and asserting it as an agreement to pay the higher price;

    f. Holding our  property for ransom;

    g. Failing to inform us of the relationship between Febex/Interstate and TopHills;

    h. Refusing to reveal the location of our  property.

    **a.**  Discovery is still on-going, and costs are currently being calculated and will become available once all discovery is complete.

    **b.**  Please see answers to Interrogatory Nos. 1 & 3 & 6.

    c.  Discovery is still on-going, and we are currently collecting all necessary documents. Descriptions of such will become available once discovery is complete. Our computers and most of the documentation related to our property and Diane's online business are in the Defendants' possession and we have no access.  We have searched for receipts and other documents related to our property, her business, and this dispute and provided what we have been able to find.

**Interrogatory No. 8**:

Please provide the factual basis of your claim against the Defendant for misrepresentation.  Further specifying:

    a.  The amount of damages that you suffered as a result of this claim and how said damages are calculated;

    b.  The name and addresses of all witnesses that support your claim and what their

13

expected testimony would be; and

   c.   A detailed description of any documents that support your claim.

**Answer:**

As noted above, Defendants made material representations to us  concerning their services, pricing, and nature of their business in order to induce us to enter into an agreement to move our  property from Massachusetts to Colorado. We  reasonably relied on those misrepresentations to our harm. The Defendants' conduct was knowing and willful, reckless and negligent. The representations are identified in our complaint. In addition, Defendants forged my name on a bill of lading and documents attached thereto.

   a.   Discovery is still on-going, and costs are currently being calculated and will become available once all discovery is complete.

   b.   Please see answers to Interrogatory Nos. 1 & 3.

   c.   Discovery is still on-going, and we are currently collecting all necessary documents. Descriptions of such will become available once discovery is complete. Our computers and most of the documentation related to our property and Diane's online business are in the Defendants' possession and we have no access.  We have searched for receipts and other documents related to our property, her business, and this dispute and provided what we have been able to find.

**Interrogatory No. 9**:

Please provide the factual basis of your claim against the Defendant for negligence. Further specifying:

   a.   The amount of damages that you suffered as a result of this claim and how said damages are calculated;

   b.   The name and addresses of all witnesses that support your claim and what their expected testimony would be; and

   c.   A detailed description of any documents that support your claim.

**Answer:**

Defendants breached their duty of care to us  to pack, to load, and to store the Plaintiffs' goods in a reasonable manner such as to avoid damage to our  goods as well as timely delivery of our  goods pursuant to the Binding Estimate agreement.

Exhibit A -- James Julsonnet Interrogatory Answers to Tophills

   a.   Discovery is still on-going, and costs are currently being calculated and will become available once all discovery is complete.

   b.   Please see answers to Interrogatory Nos. 1 & 3.

   c.   Discovery is still on-going, and we are currently collecting all necessary documents. Descriptions of such will become available once discovery is complete. Our computers and most of the documentation related to our property and Diane's online business are in the Defendants' possession and we have no access.  We have searched for receipts and other documents related to our property, her business, and this dispute and provided what we have been able to find.

**Interrogatory No. 12**:

Please provide a detailed description of how you calculated the Plaintiff's damages in this case.

**Answer:**

Our computers and most of the documentation related thereto is in the Defendants' possession and we have no access. We have searched for receipts and provided what we have been able to find. The calculation of Plaintiff's damages is an on-going process. Upon completion of discovery, we will forward an itemization of costs and descriptions of how we calculated said costs.

The damages will include the value of our household property that was converted. At present, Diane and I will testify to the value and may rely on some expert testimony.

Diane lost her online business because all her inventory has been retained by the Defendants. She and I will opine as to the value of the business and may rely on some expert testimony.

We have produced receipts of a number of the expenses incurred as a result of the Defendants' wrongful conduct that we have been able to recover.

**Interrogatory No. 13**:

Please provide the payments that you have made to any moving company to move or store any belongings or items that were formerly located at 65 Blue Ridge Road, North Andover, MA. Further providing the date of said payments and if you received any refunds of any payments.

**Answer:**

None.

**Interrogatory No. 14**:

Please state any communications that you have had with any individual concerning moving or storing belongings or items formerly located at 65 Blue Ridge Road, North Andover, MA, further providing:
      a.   The date thereof;

      b.   The substance of the communication; and

      c.   The name, address and employer of the person having knowledge of