UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 22-10767-RGS

JAMES JULSONNET and DIANE JULSONNET

v.

TOPHILLS INC. and ENRIQUE ESCOBAR

MEMORANDUM AND ORDER ON DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

February 13, 2024

STEARNS, D.J.

Plaintiffs James and Diane Julsonnet hired Febex Moving & Storage to cart their belongings across the country, from Massachusetts to Colorado. The Julsonnets and Febex executed a moving and storage agreement (Contract) with a binding estimate of $26,998.61. The Julsonnets paid a 25% deposit to Febex upon signing. On the day of the move, a subcontractor – defendant Tophills Inc.[1] – arrived at the Julsonnets' home to collect and load their belongings. The movers did not finish loading the truck on the day of the pickup but promised to return the next day to finish the job. As the reader

---

[1] Although Tophills was doing business as Five Star Movers during the relevant period, the court will refer to Tophills by its name of incorporation.

might suspect, the Julsonnets allege that Tophills never returned and refused to complete the pickup and delivery of their belongings, claiming that the Julsonnets had failed to pay the balance due under the Contract on the day of the pickup.  Tophills further refused to return the Julsonnets' belongings loaded the previous day.

The Julsonnets then filed a thirteen-count Complaint against Tophills, its president Enrique Escobar, Febex, and Febex's owner, Mikhail Naryshkin.  The Complaint alleges violations of the federal Motor Carrier Safety Act, 49 U.S.C. § 10101 et seq. (Count I); violations of the civil liability provisions of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962 (Counts II and III); violations of the Federal Trade Commission Act, 15 U.S.C. § 45 (Count IV); breach of contract (Counts V and VI); conversion and trespass (Count VII); violations of the Massachusetts Unfair Business Practices Act, Mass. Gen. Laws ch. 93A (Count VIII); fraudulent and negligent misrepresentation (Count IX); breach of the covenant of good faith and fair dealing (Count X); replevin and trover (Count XI); negligence (Count XII); and joint and several liability (Count XIII).  Tophills asserted two counterclaims, alleging that the Julsonnets failed to pay it for part of the moving and packing services.  It

seeks recovery of damages, attorneys' fees, and costs under a breach of contract theory or, in the alternative, quantum meruit.

Febex and Naryshkin were previously dismissed from the case because the Julsonnets failed to make proper service. *See* Dkt. # 26. As Febex is no longer a defendant, Count V, which alleges breach of contract against Febex, and Count XIII, which alleges joint and several liability between Febex and Tophills, are dismissed. The remaining defendants (Tophills and Escobar) now move for summary judgment on all remaining counts against them.[2] Their motion is allowed in part and denied in part.

## BACKGROUND

In 2021, James and Diane Julsonnet undertook a move from North Andover, Massachusetts, to Colorado Springs, Colorado. On August 30, 2021, James Julsonnet executed the moving Contract with Febex. Mot. for Summ. J., Ex. A (Contract) (Dkt. # 38-1). Their personal belongings, which they valued at $142,800, included household goods and Mrs. Julsonnet's business inventory. *Id*. Febex gave a firm estimate of the cost of the move at $26,998.61. *Id*. The Contract required the Julsonnets to pay a deposit of $5,998.61 at signing (which they paid with a credit card), 65% of the balance

---

[2] The court previously dismissed Count IV for failure to state a claim. Dkt. # 32.

due "on the day of pick up [sic]," and the remaining balance at the time of final delivery. *Id.*

The parties agreed that Febex would collect the Julsonnets' belongings in North Andover on September 12 and 13, 2021. *Id.* But on September 10, the movers called and asked to begin the move one day early. Pls.' Opp'n to Defs.' Mot. for Summ. J. (Opp'n) (Dkt. # 43) at 2. The Julsonnets agreed, and on September 11, 2021, movers from Tophills arrived at their home with a truck.[3]

According to the Julsonnets, the following unfolded.[4] Upon arrival, Tophills's foreman "demanded" that they sign a new bill of lading before the movers began loading the truck, which Mr. Julsonnet refused to do. Opp'n at 2. The packing nonetheless commenced, although at some point during the day, Mr. Julsonnet told the foreman that he would not pay the 65% of the balance due until the truck was fully loaded. *Id.* at 3. Tophills did not finish loading the truck, and despite Tophills's promise, never returned to finish. *Id.* When it became clear to the Julsonnets that Tophills had abandoned the

---

[3] The Contract permitted Febex to hire independent subcontractors for pickup and delivery. *See* Contract at 5.

[4] Defendants do not expressly dispute any of these facts, and they identify only six "undisputed" facts, nearly all of which the Julsonnets dispute. *See* Pls.' Statement of Disputed Facts (Dkt. # 45).

4

job, they rented a U-Haul truck, packed the remainder of their belongings, and embarked for Colorado Springs on September 13, 2021. *Id.* at 4.

Three days later, on September 16, Escobar telephoned the Julsonnets and "told them they needed to come into the office in Massachusetts and sign the paperwork," which they explained they could not physically do. *Id.* After many attempts to speak with employees at Febex or Tophills, the Julsonnets were finally told that their belongings would be delivered only if they paid approximately $58,000. *Id.*; *see also id.*, Ex. F (Dkt. # 43-7) at 30:1-7. The Julsonnets then contacted the police, who obtained bill of lading from Tophills that included an alleged forgery of Mr. Julsonnet's signature. Opp'n at 4; *id.*, Ex. H (Dkt. # 43-9). The Julsonnets were finally reunited with their belongings on January 10, 2024 (although the record is not clear whether the Julsonnets paid Tophills anything to retrieve them). Opp'n at 5.

## DISCUSSION

Summary judgment is appropriate where the movant demonstrates that, based upon the record, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Hayes v. Douglas Dynamics, Inc.*, 8 F.3d 88, 90 (1st Cir. 1993), quoting *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant must "identify for the district court the portions of the record that show the absence of any genuine issue of material fact." *Flovac, Inc. v. Airvac, Inc.*, 817 F.3d 849, 853 (1st Cir. 2016). If the movant carries this burden, "the burden shifts to the nonmoving party, who must, with respect to each issue on which [they] would bear the burden of proof at trial, demonstrate that a trier of fact could reasonably resolve that issue in [their] favor." *Borges ex rel. S.M.B.W. v. Serrano-Isern*, 605 F.3d 1, 5 (1st Cir. 2010). "This demonstration must be accomplished by reference to materials of evidentiary quality, and that evidence must be more than 'merely colorable.'" *Flovac*, 817 F.3d at 853, quoting *Anderson* , 477 U.S. at 249 (citation omitted).

**Preemption**

Defendants argue that Counts VI[5] and VII-XIII – which are state-law claims – are preempted by the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 14706. The Carmack Amendment permits "the person entitled to recover under the receipt or bill of lading" to recover for "actual loss or injury to the property" caused by the carrier. *Id.* § 14706(a)(1). The statute preempts state-law "liability stemming from damage or loss of

---

[5] Defendants' Motion states that they are moving to dismiss "Count IV – Breach of Contract." Mot. for Summ. J. (Dkt. # 39) at 1. Count VI alleges breach of contract, so the court assumes this is a typographical error.

goods, liability stemming from the claims process, and liability related to the payment of claims." *Rini v. United Van Lines, Inc.*, 104 F.3d 502, 506 (1st Cir. 1997); *see also Adams Express Co. v. Croninger*, 226 U.S. 491, 505 (1913). However, Carmack preemption does not apply to state-law liability "arising from separate harms—apart from the loss or damage of goods." *Rini*, 104 F.3d at 506.

The Julsonnets urge that Carmack preemption cannot apply because the statute applies only to the interstate shipments of goods, while Tophills never left Massachusetts with their personal effects. This argument is foreclosed by United States Supreme Court precedent. The intended destination at the time of contracting is the touchstone by which to determine whether the "character of the commerce" is interstate or intrastate. *Sprout v. City of S. Bend*, 277 U.S. 163, 168 (1928); *see also Swift Textiles, Inc. v. Watkins Motor Lines, Inc.*, 799 F.2d 697, 699 (11th Cir. 1986) (character of the commerce is "reflected by the 'intention formed prior to shipment.'"), quoting *Great N. Ry. Co. v. Thompson*, 222 F. Supp. 573, 582 (D.N.D. 1963). Based on the Contract, the transaction was intended to be "incident to an interstate journey," so it is "within the ambit of the Interstate Commerce Act." *New York, New Haven & Hartford R.R. Co. v. Nothnagle*, 346 U.S. 128, 130 (1953).

Counts VI, VIII, IX, and X allege harms apart from the loss or damage of goods and therefore are not preempted.[6]  *See Rini*, 107 F.3d at 506. However, Counts VII, XI and XII allege that the defendants lost, "damaged[,] or destroyed" the Julsonnets' property.  Compl. (Dkt. # 1) ¶¶ 85, 102, 107. These claims are preempted and are therefore dismissed.

**Count I – Federal Motor Carrier Safety Act**

Defendants' sole argument for dismissing Count I is that the Julsonnets have "provided no evidence of what [the] actual loss or injury to their property is."  This is contrary to undisputed facts in the record: the Contract valued the property at $142,800, and Ms. Julsonnet testified that the business inventory alone was worth "at least several hundred thousand dollars," and that her business made "[p]robably maybe [$]40,000" each year.  Opp'n Ex. F (Dkt. # 43-7) at 42:3, 46:13.  The court will thus deny summary judgment on Count I.

**Counts II and III – Civil RICO**

The Julsonnets allege RICO violations against both Tophills and Escobar.  However, "[i]t is only a person, or one associated with an enterprise, not the enterprise itself, who can violate the provisions of [18

---

[6] Defendants' only argument as to why Count X should be dismissed is that it is preempted by the Carmack Amendment.  Because it is not, the motion for summary judgment will be denied on Count X.

U.S.C. § 1962(c)]." *Schofield v. First Commodity Corp. of Boston*, 793 F.2d 28, 30 (1st Cir. 1986), quoting *Van Schaick v. Church of Scientology of California*, 535 F. Supp. 1125, 1136 (D. Mass. 1982); *see also Crimson Galeria Ltd. P'ship v. Healthy Pharms, Inc.*, 337 F. Supp. 3d 20, 41 (D. Mass. 2018) (same, for § 1962(d)). Counts II and III will accordingly be dismissed as against Tophills.

RICO makes it unlawful for "any person employed by or associated with any enterprise engaged in . . . interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt," or to conspire to do so. 18 U.S.C. § 1962(c), (d); *see also id.* § 1964(c) (creating a private right of action to "[a]ny person injured in his business or property by reason of a violation of [the criminal RICO provisions]"). The statute defines "racketeering activity" broadly "to include a host of so-called predicate acts." *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 647 (2008). As relevant here, racketeering activity includes "any act or threat involving . . . extortion" and "any act which is indictable under" the federal mail fraud and wire fraud statutes, 18 U.S.C. §§ 1341 (mail fraud), 1343 (wire fraud). 18 U.S.C. § 1961(1).

9

Proof of a predicate act alone is insufficient to generate civil RICO liability; the Julsonnets must also prove a pattern of racketeering activity by showing both continuity and relatedness of the predicate acts. *See Giuliano v. Fulton*, 399 F.3d 381, 386-387 (1st Cir. 2005). They may show continuity by proving either a "closed period of repeated conduct" that "amounted to . . . continued criminal activity" or "past conduct that by its nature projects into the future with a threat of repetition." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 237, 241 (1989). Predicate acts are related when they "embrace[] criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id.*, quoting 18 U.S.C. § 3575(e).

Escobar asserts, without citation, that the sole conduct the Julsonnets allege gives rise to their RICO claims is that defendants "forged their signature on the bill of lading and converted their belongings." Mot. for Summ. J. at 7 (footnote omitted). This is both contrary to the record, *see* Opp'n, Ex. A (Dkt. # 43-2), and patently deficient to carry his burden, *see Flovac*, 817 F.3d at 853. Although Escobar need not negate the Julsonnets' factual bases for their RICO claims, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), he has not identified anything in the record showing that there

10

is no genuine factual dispute about the conduct that gives rise to the RICO claims. Summary judgment cannot be granted on so thin a showing by Escobar.

**Count VI – Breach of Contract**

To prove that defendants breached the moving Contract, the Julsonnets must show that: (1) the parties had a valid contract; (2) defendants breached the contract; and (3) the Julsonnets sustained damages because of the breach. *Brooks v. AIG SunAmerica Life Assurance Co.*, 480 F.3d 579, 586 (1st Cir. 2007).[7] Defendants claim that the Contract is invalid for want of consideration because the Julsonnets did not pay the amount owed to Tophills and because they received a refund of their deposit from their credit card company. Mot. for Summ. J. at 4.

Defendants' argument is better characterized as an affirmative defense meant to justify their breach on grounds that the Julsonnets failed to perform.[8] But even this more accurate framing is unsuccessful. The Contract provides that the Julsonnets were required to pay 65% of the

---

[7] As a technical matter, "causation of damages is not an element of breach of contract [under the Massachusetts rule], as a plaintiff is entitled to at least nominal damages upon proving a breach." *Boston Prop. Exch. Transfer Co. v. Iantosca*, 720 F.3d 1, 11 (1st Cir. 2013), citing *Nathan v. Tremont Storage Warehouse, Inc.*, 328 Mass. 168, 171 (1951).

[8] The requisite consideration that created a valid contract was the 25% deposit.

11

balance due "[o]n the day of pick up [sic]" and defines the pickup date as "09/12/2021-09/13/2021." Contract at 3. As noted, the parties orally modified the agreement to schedule the pickup on September 11 and 12. But as the Contract defined the pickup date as two days, the most reasonable interpretation of this is that the Julsonnets were required to pay the 65% of the balance due on completion of the pickup on the second day.

The undisputed facts are that the Julsonnets were ready to perform on September 12. But they were not required to perform before defendants completed the pickup the next day.⁹ Opp'n at 10. The court will therefore deny summary judgment on Count VI.

**Count VIII – Chapter 93A**

To prevail on their Chapter 93A claim, the Julsonnets must show "1) that the defendant[s] . . . committed an unfair or deceptive act or practice; . . . 2) a loss of money or property suffered as a result; and 3) a causal connection between the loss suffered and the defendant's unfair or deceptive method, act, or practice." *Auto Flat Car Crushers, Inc. v. Hanover Ins. Co.*, 469 Mass. 813, 820 (2014) (footnote omitted). Defendants argue

---

⁹ Defendants' (very brief) argument that payment was a condition precedent to *completing* the move also fails. This may be true, but the Julsonnets' belongings needed to be loaded onto the truck before beginning the move.

12

that the Julsonnets failed to serve a pre-suit demand letter as is required to pursue a § 9 claim under Chapter 93A.  The Julsonnets concede that they did not send a demand letter, but argue they are pursuing a § 11 claim, which does not require pre-suit notice.

Section 11 protects "[a]ny person who engages in the conduct of any trade or commerce" from suffering damages from another's unfair or deceptive act or practice.  Mass. Gen. Laws ch. 93A, § 11.  "The question of whether a private individual's participation in an isolated transaction takes place in a 'business context,'" and is thus within § 11's ambit, is "determined from the circumstances of each case."  *Begelfer v. Najarian*, 381 Mass. 177, 190-191 (1980).  The relevant circumstances include "the frequency of similar transactions, the motivation behind the transaction, and the role of the participant in the transaction."  *Kunelius v. Town of Stow*, 588 F.3d 1, 16 (1st Cir. 2009).

The court finds that the Julsonnets' engagement of Febex and Tophills is not a commercial transaction.  Although Ms. Julsonnet intended to move her business inventory along with their household belongings, there is no evidence that "the nature of the transaction was grounded in business."  *See Garango & Assocs., P.C. v. John Swider & Assocs.*, 55 Mass. App. Ct. 256, 263 (2002).  That is, it is not clear that the decision to hire a moving company

13

was "motivated by business" rather than "personal reasons." *See Begelfer*, 381 Mass. at 191. The Julsonnets' Chapter 93A claim is thus better characterized as a § 9 claim. As they failed to serve the requisite demand letter on defendants, Count VIII is dismissed.

**Count IX – Misrepresentation**

The Julsonnets concede that their misrepresentation claim "is based on the misrepresentations made to [them] to induce [them] to enter into the contract." Opp'n at 12. The only alleged misrepresentations were made by Febex. As Febex is no longer a defendant, the court will allow summary judgment on Count IX.

## ORDER

For the foregoing reasons, defendants' motion for summary judgment is ALLOWED as to Counts VII, VIII, IX, XI, and XII against all defendants, ALLOWED as to Counts II and III as against Tophills, DENIED as to Counts I, VI, and X as against all defendants, and DENIED as against Escobar as to Counts II and III. The court hereby DISMISSES WITH PREJUDICE Counts II and III as against Tophills and Counts V, VII, VIII, IX, XI, XII, and XIII as against all defendants.

SO ORDERED.

/s/ Richard G. Stearns  
UNITED STATES DISTRICT JUDGE